UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

SHERRY Y. KILGORE,               )
                                 )
            Plaintiff,           )
                                 )
v.                               )        No. 1:19-CV-168-DCP
                                 )
ANDREW M. SAUL,                  )
Acting Commissioner of Social Security,  )
                                 )
            Defendant.           )

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 15].

Now before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in

Support [Docs. 19 & 20] and Defendant's Motion for Summary Judgment and Memorandum in

Support [Docs. 21 & 22]. Plaintiff subsequently filed a Reply [Doc. 23] to the Commissioner's

Motion for Summary Judgment. Sherry Y. Kilgore ("Plaintiff") seeks judicial review of the

decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew

M. Saul ("the Commissioner"). For the reasons that follow, the Court will **GRANT IN PART**

Plaintiff's motion and **DENY** the Commissioner's motion.

I.    **PROCEDURAL HISTORY**

On May 1, 2017, Plaintiff protectively filed an application for disability insurance benefits

pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*., claiming a period of

disability that began on that day. [Tr. 11, 184, 294]. After her application was denied initially and

upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 215]. A hearing was held

on October 30, 2018. [Tr. 153–73]. On January 24, 2019, the ALJ found that Plaintiff was not disabled. [Tr. 11–25]. The Appeals Council denied Plaintiff's request for review on April 8, 2019 [Tr. 1–7], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on June 6, 2019, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2021.

2. The claimant did not engage in substantial gainful activity since May 1, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: degenerative joint disease; osteoarthritis; patella alta of the left knee; migraine headaches; anemia; iron deficiency; B12 deficiency; bipolar disorder; generalized anxiety disorder and panic disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: no work with the public; simple, routine, repetitive tasks; workplace change should occur infrequently.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 3, 1970, and was 46 years old,

2

which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, from May 1, 2017, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 13–24].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It

3

is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.    DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

4

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff asserts that the ALJ's disability decision is not supported by substantial evidence in several regards. First, Plaintiff claims that the ALJ improperly failed to include sufficient mental

5

limitations in the RFC determination to account for her mental impairments. Next, Plaintiff asserts that the ALJ erred by failing to properly consider the medical record regarding her headaches, including a submitted migraine log. Plaintiff alleges that the ALJ also failed to properly address or account for significant assessed limitations from her treating sources. Here, Plaintiff claims that the ALJ failed to appropriately assess the medical opinions of record in light of the new applicable regulations. Additionally, Plaintiff argues that the ALJ improperly mischaracterized the medical record regarding her bladder and urinary impairments. Lastly, Plaintiff maintains that the ALJ failed to properly evaluate her orthopedic impairments, and that newly submitted evidence to the Appeals Council demonstrates that she continued to have significant difficulties with her right foot injury. The Court will review Plaintiff's allegations of error in turn.

### A. Mental Limitations in the RFC Determination

Plaintiff maintains that the ALJ improperly failed to include any limitations regarding her ability to interact with coworkers and supervisors or her ability to sustain concentration, persistence, or pace. Plaintiff further claims that the lack of "sufficient mental limitations" is inconsistent with the ALJ's finding that she had moderate limitations in interacting with others, as well as maintaining concentration, persistence, or pace. [Doc. 20 at 8]. Plaintiff also points to the ALJ's finding of bipolar disorder, generalized anxiety disorder, and panic disorder as severe impairments. Lastly, Plaintiff notes that the ALJ found the opinion of Rebecca Sweeney, PhD, the nonexamining state agency physician, persuasive, but the ALJ subsequently failed to include the mental health limitations assessed in Dr. Sweeney's opinion.[1]

---

[1] In the disability decision, the ALJ noted that he considered the opinions of the nonexamining state agency physicians who reviewed the evidence of record at the initial and reconsideration levels of the agency's review, but that he "has found their physical findings to be partially persuasive." [Tr. 22]. However, the ALJ specifically noted that he "found the mental

6

The Commissioner responds that the ALJ properly evaluated Plaintiff's mental functioning in the disability decision and was not required to include all limitations set forth in Dr. Sweeney's opinion. Additionally, the Commissioner states that Plaintiff has failed to cite to any supporting authority for her claim that the ALJ's finding of moderate limitations at Step Three therefore required him to adopt additional, specific limitations in the RFC determination. The Commissioner also claims, however, that the RFC determination did in fact include limitations relating to Plaintiff's ability to concentrate. *See* [Doc. 22 at 15–16].

In the disability decision, the ALJ found at Step Three that Plaintiff was moderately limited in all four areas of mental functioning (or the paragraph B criteria). [Tr. 15]. As previously stated, the ALJ also found that Plaintiff had the residual functional capacity to perform sedentary work, except for no work with the public, infrequent workplace changes, and simple, routine, and repetitive tasks. [Tr. 16].

Initially, "Plaintiff's argument—that an ALJ's findings at Step Three, which address whether a claimant meets the requirements of a given Listing, must be incorporated into the RFC— is unsupported by case law." *Hayman v. Berryhill*, No. 3:16-cv-1998, 2017 WL 9476860, at *9 (N.D. Ohio Oct. 30, 2017). "The RFC is a subsequent determination that is distinct and separate from Step 3." *Shinlever v. Berryhill*, No. 3:15-CV-371-CCS, 2017 WL 2937607, at *4 (E.D. Tenn. July 10, 2017) (citing *Turbeville v. Colvin*, No. 1:12-CV-061, 2014 WL 6605483, at *10 (M.D. Tenn. Nov. 19, 2014) ("[Step Three and the RFC] are separate steps and a finding at one step does not necessarily equate to the same finding being made at a later step.")); *see also* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *4 (July 2, 1996) ("The adjudicator must remember that the limitations

---

health related findings at Exhibit 3A"—Dr. Sweeney's opinion—"to be persuasive as moderate limitations are consistent with the overall record in this case." [*Id.*].

identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment . . . .").

Next, with respect to Plaintiff's argument regarding her ability to sustain concentration, persistence, or pace, this issue has been extensively discussed by the Sixth Circuit—although Plaintiff failed to cite any case law in support of her argument. In *Ealy v. Commissioner of Social Security*, the Sixth Circuit concluded that an RFC and hypothetical question to a VE that included the limitations of "simple repetitive tasks and instruction" failed to accurately represent a medical opinion that assessed limitations of "simple, repetitive tasks [for] [two-hour] segments over an eight-hour day where speed was not critical." 594 F.3d 504, 516 (6th Cir. 2010). As later clarified in *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426 (6th Cir. 2014), the problem in *Ealy* was that the RFC and hypothetical question "truncated the doctor's specific restrictions." *Id.* at 436–37. Distinguishing *Ealy*, the *Smith-Johnson* Court found "the limitation to simple, routine, and repetitive tasks adequately conveys Smith–Johnson's moderately-limited ability 'to maintain attention and concentration for extended periods'" because "[u]nlike in *Ealy*, Dr. Kriauciunas did not place any *concrete functional limitations* on her abilities to maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks." *Id.* at 437 (emphasis added). Further, the Sixth Circuit has more recently held that "[c]ase law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is *per se* insufficient to convey moderate limitations in concentration, persistence and pace." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016).

Here, Plaintiff fails to point to any specific limitations assessed in Dr. Sweeney's opinion regarding her ability to sustain concentration, persistence, or pace. Dr. Sweeney examined the evidence of record regarding Plaintiff's mental impairments at the reconsideration level of the agency's review on October 27, 2017, and found that her severe mental impairments included

8

depressive, bipolar and related disorders, as well as anxiety and obsessive-compulsive disorders. [Tr. 194]. Dr. Sweeney then considered the paragraph B criteria and opined that Plaintiff was moderately impaired in all four areas, including interacting with others and concentrating, persisting, or maintaining pace. [Tr. 195]. Specifically, Dr. Sweeney found that Plaintiff was not significantly limited in the ability to carry out very short and simple instructions, sustain an ordinary routine without special supervision, or to make simple work-related decisions. [Tr. 198]. However, Dr. Sweeney assessed that Plaintiff was moderately limited in the ability to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or in proximity to others without being distracted by them; and to complete a normal workweek without interruptions. [*Id.*].

When assessing Plaintiff's social interaction limitations, Dr. Sweeney opined that Plaintiff was not significantly limited in the ability to ask simple questions or request assistance, maintain socially appropriate behavior, or adhere to basic standards of neatness. [Tr. 199]. She found that Plaintiff was moderately limited in the ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. [*Id.*]. Lastly, Dr. Sweeney explained in narrative form that Plaintiff had the ability to maintain concentration, persistence, and pace with appropriate breaks for the normal workweek under normal supervision for the tasks described above, as well as that within the above-described restrictions, Plaintiff had the ability to infrequently relate to supervisors, coworkers, and the general public. [*Id.*].

Therefore, the assessed RFC limitation of performing simple, routine, and repetitive tasks does not conflict with the moderate limitations assessed in Dr. Sweeney's opinion, as Dr. Sweeney

9

"did not place any concrete functional limitations on her abilities to maintain attention, concentration, or pace when performing" this level of tasks. *See Smith-Johnson*, 579 F. App'x at 437 ("Here, the limitation to simple, routine, and repetitive tasks adequately conveys Smith–Johnson's moderately-limited ability 'to maintain attention and concentration for extended periods.' ... Second, Dr. Kriauciunas's conclusion that Smith-Johnson is moderately limited in her ability 'to respond to changes at work' is reflected by the terms 'routine' and 'repetitive.'").

However, Dr. Sweeney included a more specific limitation with respect to the assessed moderate limitations in social function—that Plaintiff had the ability to infrequently relate to supervisors, coworkers, and the general public. [Tr. 199]. As detailed above, Dr. Sweeney also found that Plaintiff was moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors, as well as to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. [*Id.*]. While the ALJ included a limitation of no work with the public and infrequent workplace changes in the RFC determination, he did not specifically include any limitations regarding Plaintiff's ability to interact with supervisors or coworkers.

Under the previous regulations, even if an ALJ assigned great weight to an opinion, the ALJ was not required to incorporate every opined limitation into the RFC.[2] *See, e.g.*, *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 276 (6th Cir. 2015); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009); *see Purtty v. Comm'r of Soc. Sec. Admin.*, No. 1:13-CV-1204,

---

[2] The applicable regulations for the evaluation of medical opinions have been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); *see also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017). As Plaintiff's application was filed after March 27, 2017, the revised regulations apply.

10

2014 WL 3510991, at *9 (N.D. Ohio July 10, 2014) ("[A]n ALJ is not required to explain each limitation or restriction he adopts or, conversely, does not adopt from a consultative examiner's opinion. While an ALJ must consider medical opinions, the RFC determination is expressly reserved to the Commissioner.") (internal citations omitted). Similarly, "[t]he Revised Regulations provide no basis for abandoning this precedent." *Ephraim v. Saul*, No. 1:20-CV-633, 2021 WL 327755, at *13 (N.D. Ohio Jan. 8, 2021) ("Thus, although the ALJ deemed Dr. Todd's opinion 'persuasive,' and stated that he was rewording her recommended limitations, he was not required to include every element of all of her proposed limitations in the RFC or explain why he did not adopt all of the proposed limitations."), *report and recommendation adopted sub nom.*, *Ephraim v. Comm'r of Soc. Sec.*, 2021 WL 325721 (N.D. Ohio Feb. 1, 2021).

While the ALJ retains a "zone of choice," he must explain why he did not include limitations assessed in contradicting medical opinions. *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x. 637, 649 (6th Cir. 2013). Social Security Ruling 96-8p provides that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." 1996 WL 374184, at *7 (July 2, 1996). An "ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Lowery v. Comm'r of Soc. Sec.*, 55 F. App'x 333, 339 (6th Cir. 2003) (quoting *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).

Here, the ALJ failed to specifically review Plaintiff's ability to interact with her supervisors and coworkers, despite acknowledging moderate limitations in social interaction and finding persuasive the opinion of Dr. Sweeney, which included a limitation to infrequent relating with supervisors and coworkers. *See, e.g.*, *Krystal C. v. Saul*, No. 19 C 2696, 2020 WL 6134983, at *7

11

(N.D. Ill. Oct. 19, 2020) ("Despite giving great weight to the state agency psychologists' opinions and explicitly including Dr. Biscardi's limitation to superficial interaction with co-workers and supervisors in Krystal's RFC, the ALJ did not include a limitation to avoid interaction with the general public in the RFC. It is unclear why the ALJ declined to accept Dr. Tin's restriction to work tasks that do not require interaction with the general public."); *Robert W. v. Comm'r, Soc. Sec. Admin.*, No. 1:18-CV-0998-JFK, 2019 WL 3934803, at *8 (N.D. Ga. Aug. 20, 2019) ("The ALJ did not offer any reasons for implicitly rejecting the portions of the state agency psychological consultants' opinions concerning social interaction with coworkers."); *Ekkens v. Comm'r of Soc. Sec.*, No. 1:19-CV-364, 2019 WL 1409352, at *10 (N.D. Ohio Mar. 28, 2019) (remanding where ALJ found moderate limitation in interacting with others and afforded great weight to opinions of treating providers  but "failed to explain why he did not include an RFC limitation to occasional interaction with supervisors, co-workers, and others"). The ALJ further failed to include any specific limitation on Plaintiff's ability to interact with coworkers or supervisors in the RFC determination, despite including a prohibition on working with the public. *Cf. Anderson v. Comm'r of Soc. Sec.*, No. 3:19-CV-85-SKL, 2020 WL 3485342, at *8 (E.D. Tenn. Mar. 18, 2020) ("To accommodate Plaintiff's moderate limitation in interacting with others, the ALJ limited Plaintiff's RFC to only occasional interaction with the public, coworkers, and supervisors. Plaintiff cites no authority supporting the proposition that this is insufficient, and the Court could find none."); *Haggard v. Berryhill*, No. 3:17-CV-99-DCP, 2018 WL 6003862, at *8 (E.D. Tenn. Nov. 15, 2018) ("[A] marked limitation is not synonymous with a specific functional restriction or RFC. As such, the Court finds that Plaintiff has not demonstrated why an RFC of occasional interaction with coworkers and the public, and direct, non-confrontational supervision, fails to accommodate Plaintiff's marked limitation in social interactions.").

12

The Commissioner claims that "even if the ALJ had erred in not entirely adopting Dr. Sweeney's opinion regarding interaction with others, remand would still not be required, as the doctor's assessed limitations do not support a finding of disability in this case." [Doc. 22 at 15]. In support, the Commissioner notes that the VE testified that an individual with Plaintiff's vocational profile and RFC could perform a significant number of jobs, including as a document preparer, an assembler, and a clerk. The Commissioner states that these positions "all involve no more than superficial interactions with others, as their Dictionary of Occupational Titles (DOT) entries are all coded with an 8 in the 'People' field and marked 'not significant.'" [*Id.* at 16].

For example, in *Quintanilla v. Berryhill*, the Central District of California addressed a similar argument where the DOT descriptions for jobs as an assembler, cleaner, packager, and machine feeder "indicate that dealing with people is 'not significant' . . . talking is 'not present' . . . and each of these jobs is unskilled, which indicates limited interaction with people." No. CV 16-01043-DFM, 2017 WL 1433306, at *4 (C.D. Cal. Apr. 21, 2017). Therefore, the Central District of California found that "to the extent the ALJ failed to limit Plaintiff to 'superficial work related interaction with coworkers and supervisors,' it was inconsequential to the outcome of the ALJ's final disability determination." *Id.* (noting "[n]othing else in the descriptions for the identified jobs indicates that they involve more complex than superficial interaction with coworkers and supervisors").

This issue here, however, is not the quality or nature of interactions Plaintiff may have with coworkers and supervisors, i.e., superficial, but rather the quantity of time involved with those interactions. "The Social Security Administration defines 'occasional' as 'occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday.'" *Windsor v. Berryhill*, No. 1:15-CV-391-GMB, 2017 WL 1147465, at *4 (M.D.

Ala. Mar. 27, 2017) (citing Soc. Sec. Rul. 96-9p, 1996 WL 374185, at *3 (July 2, 1996)). "On the other hand, the Administration defines 'frequent' as 'occurring from one-third to two-thirds of the time.'" *Id.* (citing Soc. Sec. Rul. 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983)). "The Administration does not define 'infrequent,' but by implication infrequent must be less often than frequent—that is, occurring less than one-third of the time—a definition that overlaps with the definition of 'occasional.'" *Id.*; *see, e.g.*, *Adam C. v. Saul*, No. 19-CV-0023, 2019 WL 6130815, at *3 n.3 (N.D. Ill. Nov. 19, 2019); *O'Brien v. Colvin*, No. 1:15-CV-536, 2016 WL 2755459, at *5 (M.D.N.C. May 11, 2016), *report and recommendation adopted by*, 2016 WL 5660296 (M.D.N.C. Sept. 30, 2016). "As to 'superficial,' there is no such definition within Social Security Ruling 83-10." *Greene v. Saul*, No. 3:19-CV-00687-JD, 2020 WL 4593331, at *4 (N.D. Ind. Aug. 11, 2020).

However, "occasional and superficial are not coterminous." *Danielson v. Comm'r of Soc. Sec.*, No. 3:18-CV-84, 2019 WL 1760071, at *4 (S.D. Ohio Apr. 22, 2019), *report and recommendation adopted by*, 2019 WL 2011077 (S.D. Ohio May 7, 2019). "Instead, [o]ccasional contact goes to the quantity of time spent with [ ] individuals, whereas superficial contact goes to the quality of the interactions." *Id.* (internal quotation marks omitted) (quoting *Hurley v. Berryhill*, No. 1:17-CV-421-TLS, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018)). "Courts have found error where . . . an ALJ fails to address a medical source's opinion regarding both the nature and frequency of an individual's ability to interact with others in the workplace." *Scott v. Comm'r of Soc. Sec.*, No. 3:18-CV-171, 2019 WL 2462282, at *3 (S.D. Ohio June 13, 2019) (collecting cases), *report and recommendation adopted by*, No. 3:18-CV-171, 2019 WL 4220925 (S.D. Ohio Sept. 5, 2019). Therefore, as a distinction exists between infrequent interactions with coworkers and supervisors and a superficial degree regarding the extent of such interactions, the Court cannot

14

find that any such error by the ALJ to include such a limitation was harmless. Accordingly, Plaintiff's case will be remanded for the ALJ to appropriately consider Plaintiff's ability to interact with her coworkers and supervisors in the RFC determination.

### B. Migraine Log

Plaintiff contends that the ALJ failed to properly consider the evidence regarding her migraines, including a submitted migraine log. Additionally, Plaintiff states that "the evidence from [her] neurologist provides support and is consistent with her migraine headache log." [Doc. 20 at 11]. Plaintiff asserts that despite her treatment records, migraine log, and testimony regarding the frequency of her migraine headaches, the ALJ "fail[ed] to consider her headache log," as well as "the medical evidence and treatment notes documenting the severity of her migraine headaches." [*Id.* at 14]. Lastly, Plaintiff claims that this error was harmful as the ALJ subsequently failed to include any limitations in the RFC to account for absences or time-off task that she would experience due to her migraine headaches or treatment for these headaches.

The Commissioner responds that Plaintiff's arguments regarding the ALJ's decision not to include additional limitations in the RFC related to her migraine headaches "amounts to Plaintiff merely disagreeing with the ALJ's findings." [Doc. 22 at 22]. The Commissioner notes that the ALJ specifically considered Plaintiff's migraines and discussed her course of treatment. Lastly, Commissioner asserts that the ALJ was not required to specifically discuss each piece of evidence in the medical record. Plaintiff replies that the medical record regarding her treatment for chronic migraines is "substantially inconsistent with the ALJ's findings" and the ALJ thus "failed to account for [Plaintiff's] allegations that are consistent with and strongly supported by the evidence of record." [Doc. 23 at 2].

In the disability decision, the ALJ first noted Plaintiff's testimony that she has chronic

15

migraines, as well as Feb 25, 2016 treatment notes from Erlanger UT Neurology for evaluation of Plaintiff's headaches. [Tr. 17]; *see* [Tr. 893]. The ALJ reviewed Plaintiff's neurologic examination, as well as that Plaintiff stated that she would like to start a trial of Topamax. [Tr. 17]; *see* [Tr. 987]. The ALJ then discussed that Plaintiff returned in September of 2016 for a follow-up appointment and "reported that her milder headaches had improved but she was still having more severe headaches each week," that she felt that her new position at work and increased stress had caused an increased frequency in headaches, and that "a MRI of her brain was given, which showed scattered foci of white matter signal abnormality and developmental venous abnormality in the right paramedian frontal lobe." [Tr. 17]; *see* [Tr. 899].

Next, the ALJ discussed that Plaintiff reported in February of 2017 "that her alleged headaches were improved, her Bipolar was stable and she was having no mood swings." [Tr. 18]; *see* [Tr. 671]. The ALJ stated that Plaintiff reported in October of 2017 that her alleged headaches had returned. [Tr. 18]; *see* [Tr. 683]. The ALJ detailed that Plaintiff reported in September of 2017 that she was still having migraine headaches, and that during a follow-up visit in October of 2017, "a recent EEG was normal and a recent MRI of her brain showed no acute abnormality (unchanged from prior exam)." [Tr. 19]; *see* [Tr. 906, 917].[3] Additionally, the ALJ stated that Plaintiff "was provided with medication management treatment and it was also noted that her alleged episodes were not found to be seizures." [Tr. 19]; *see* [Tr. 918].

The ALJ then reviewed Plaintiff's follow-up visit regarding her headaches at UT Erlanger Neurology in April of 2018. [Tr. 20]; *see* [Tr. 1110]. The ALJ detailed that in May of 2018,

_____

[3] The October 30, 2017 treatment note states that an MRI of Plaintiff's brain "shows no acute abnormality, right frontal developmental venous anomaly, unchanged from prior exam." [Tr. 1107].

Plaintiff was treated with Botox injections for her "alleged headaches," physical therapy treatments were recommended, and "physical therapy notes show that the claimant attended four sessions from April to July of 2018 and the claimant reported that the PT treatment was helpful." [Tr. 20]; *see* [Tr. 1115–16].

Plaintiff points to additional treatment notes documenting her reports of migraines since she was eighteen that were worsening with age, MRI testing revealing a developmental venous abnormality in the right paramedian frontal lobe, and reports of increased frequency and severity of headaches in October of 2017. [Tr. 1106–07]. Plaintiff notes that "[a]ll of these issues were reported despite a prior increase in her Topamax for migraine prevention and [F]ioricet to take when she had a severe headache." [Doc. 20 at 12]. Additionally, Plaintiff claims that treatment notes following her Botox injection and physical therapy detail that she reported a mild improvement with physical therapy but continued severe, migraine headaches on May 30, 2018. *See* [Tr. 1369].[4]

Plaintiff also bases her argument on the ALJ's statement during the disability hearing that he wanted to address the submitted migraine log "on the record, so we'll know to expect it." *See* [Doc. 20 at 10]. However, a review of the transcript of the hearing demonstrates that the ALJ stated that Plaintiff's counsel had informed the ALJ "prior to the hearing" that he brought "a migraine log," consisting of a "calendar showing when and describing some of the migraines." [Tr. 155–56]. The ALJ mentioned the migraine log during the hearing in order to ensure that its production was documented on the record. The Court does not find that this statement creates any obligation on behalf of the ALJ to specifically discuss the submitted evidence. *See Boseley v.*

---

[4] Plaintiff incorrectly states that this treatment note was from "June 2018." [Doc. 20 at 12].

17

*Comm'r of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir. 2010) ("Neither the ALJ nor the [Appeals] Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion."); *Kornecky v. Comm'r of Soc. Sec.*, 176 F. App'x 496, 507–08 (6th Cir. 2006). However, while the ALJ reviewed the medical record regarding Plaintiff's chronic migraines, he failed to make any findings or specifically consider the impact of her headaches in the RFC determination. Accordingly, on remand, the ALJ is specifically directed to review the effect that Plaintiff's migraine headaches have on her ability to perform work-related activities. *See, e.g.*, *Montoya v. Saul*, No. CV 19-271 JAP/LF, 2020 WL 6526142, at *5 (D.N.M. Nov. 5, 2020) (finding the ALJ failed to consider the limiting effects of the claimant's migraines when formulating her RFC, despite acknowledging that she did not have a severe migraine impairment, as "without the correct application of law and analysis, this Court cannot confidently say that Ms. Montoya's RFC should not include limitations from her migraine headache impairment"); *Burton v. Comm'r of Soc. Sec.*, No. 18-13103, 2020 WL 57612, at *2 (E.D. Mich. Jan. 6, 2020) (finding the ALJ failed to appropriately consider the claimant's migraine headaches when the ALJ failed to address whether the claimant's headaches were severe or non-severe, or whether they caused limiting effects); *cf. Falin v. Saul*, No. 2:18-CV-202, 2020 WL 1151308, at *4 (E.D. Tenn. Mar. 9, 2020) (finding the ALJ did not commit reversible error even if he erred by failing to find the claimant's migraines as a severe impairment, as he found some impairments to be severe and considered the limiting effects of the claimant's migraines in the RFC determination).

### C. Treating Sources' Opinions

Plaintiff asserts that the ALJ erred in his assessment of the opinions of her treating providers, as "[t]he ALJ did not apply or refer [to] the new factors for considering and articulating

weight assigned to medical opinion[s] for claims filed after March 27, 2017." [Doc. 20 at 15]. Plaintiff claims that despite the alleged significant support in the medical record for the opinions of her treating nurse practitioner Madeline Grotefendt, FNP, and masters level mental health therapist, JoAnn Poschke[5], M.A., the ALJ improperly found Ms. Poshcke's opinion to be unpersuasive and MS. Grotefendt's opinion to be only partially persuasive. The Government responds that the ALJ appropriately considered the medical opinions of record under the applicable regulations.

Plaintiff was treated for her bipolar disorder, anxiety, and panic disorder and began seeing Ms. Poschke on June 6, 2017. [Tr. 733]. Plaintiff attended three therapy sessions with Ms. Poschke in June of 2017. [Tr. 721–729], and continued therapy and medication management appoints through July of 2018. [Tr. 699–720, 1140–1203, 1206–31]. Ms. Poschke then completed a mental residual functional capacity assessment on July 27, 2018. [Tr. 976–79]. Ms. Poschke noted that Plaintiff began bi-weekly mental health treatment on August 25, 2015 and assessed that Plaintiff had moderate limitations in the ability to remember locations and work-like procedures and understand and remember very short and simple instructions, while she was markedly limited in the ability to understand and remember detailed instructions. [Tr. 976–77]. Additionally, Ms. Poschke assessed that Plaintiff was moderately limited in the ability to carry out very short and simple instructions, to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, and make simple work-related decisions; but that she was markedly limited in the ability to carry out detailed

---

[5] The Court notes that both Plaintiff and the ALJ appeared to have misspelled Ms. Poschke's name throughout the briefing and disability decision.

instruction and maintain attention and concentration for extended periods. [Tr. 977–78]. Ms. Poschke found that Plaintiff was not ratable in regard to the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. [Tr. 978].

When assessing Plaintiff's social interaction, Ms. Poschke assessed that she was moderately limited in the ability to interact appropriately with the general public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. [*Id.*]. However, Ms. Poschke found that Plaintiff was mild-to-moderately limited in the ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. [*Id.*]. Lastly, when reviewing adaption, Ms. Poschke found that Plaintiff was moderately limited in the ability to respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions, and travel in unfamiliar places or use public transportation; but that she was markedly limited in the ability to set realistic goals or make plans independently of others and to tolerate normal levels of stress. [Tr. 979].

Plaintiff's primary care provider and treating nurse practitioner, Ms. Grotefendt, completed a medical source statement on June 25, 2018. [Tr. 946–48]. Ms. Grotefendt opined that during an eight-hour work day, Plaintiff could occasionally lift and carry up to twenty pounds, frequently lift and carry up to ten pounds, could stand and walk for about two hours, and could sit for about four hours during an eight-hour workday. [Tr. 946]. Additionally, Ms. Grotefendt assessed that Plaintiff could sit for sixty minutes before changing positions, stand for thirty minutes before changing positions, and must walk around for at least five minutes every hour. [*Id.*]. Ms. Grotefendt stated that these findings were supported by Plaintiff's chronic back pain, migraine

20

headaches, diffuse arthralgia, fatigue, and anemia. [*Id.*].

Next, Ms. Grotefendt found that Plaintiff could occasionally twist, stoop, crouch, and climb stairs and ladders, and that she could not push or pull greater than ten pounds, both due to her chronic back pain. [Tr. 947]. Ms. Grotefendt did not assess any environmental restrictions, stated that Plaintiff would need to miss work one day each month due to her impairments, and noted that she believed that Plaintiff could work on a regular and sustained basis in light of her impairments. [Tr. 947–48].

Since Plaintiff's claim was filed after March 27, 2017, the Social Security Administration's new regulations for evaluation of medical opinion evidence apply to this claim. *See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Under the new revised regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings, including those from your medical sources." 20 C.F.R. § 404.1520c(a). The Commissioner will "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the following factors: 1) supportability; 2) consistency; 3) the source's relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; 4) the source's specialized area of practice; and 5) other factors that would tend to support or contradict a medical opinion, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520(a), (c)(1)-(5). However, supportability and consistency are the most important factors. 20 C.F.R. §§ 404.1520(c)(b)(2).

Lastly, the revised regulations have set forth new articulation requirements for the ALJs in their consideration of medical opinions, stating:

**(1) Source-level articulation.** Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually;

**(2) Most important factors.** The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record;

**(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue.** When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. § 404.1520c(b)(1)-(3) (emphasis added); *see generally Ephraim v. Saul*, No. 1:20-CV-633, 2021 WL 327755, at *13 (N.D. Ohio Jan. 8, 2021), *report and recommendation adopted sub nom.*, *Ephraim v. Comm'r of Soc. Sec.*, 2021 WL 325721 (N.D. Ohio Feb. 1, 2021); *Gentry v. Saul*, No. 3:19-CV-778, 2020 WL 5100848, at *5–6 (M.D. Tenn. Aug. 10, 2020), *report and*

22

*recommendation adopted sub nom.*, *Gentry v. Soc. Sec. Admin.*, 2020 WL 5096952 (M.D. Tenn. Aug. 28, 2020).

As Plaintiff's case will be remanded, the Court will not review in great detail Plaintiff's arguments regarding the ALJ's treatment of the medical opinions. However, the Court finds that the ALJ properly considered these factors in evaluating whether Ms. Grotefendt and Ms. Poschke's opinions. First, the ALJ reviewed Ms. Grotefendt's opinion and found it to be partially persuasive "because her opinion is not entirely consistent with the medical evidence of record in this case." [Tr. 22]. The ALJ then detailed that while Ms. Grotefendt provided limitations based on Plaintiff's reported chronic back pain, "treatment notes found throughout the record show overall normal functioning related to her back, the record contains no imaging of her spine and the record also shows that the claimant has not presented on a consistent basis for treatment of alleged back pain." [*Id.*].

Here, the ALJ detailed how the opinion was inconsistent with the medical record detailed throughout the disability decision. *See* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be."). Contrary to Plaintiff's arguments, the ALJ detailed how the medical record did not support the chronic back pain listed by Ms. Grotefendt as a supporting basis for her opinion.

The ALJ reviewed Ms. Poschke's opinion and found that the moderate to marked limitations in Plaintiff's ability to understand and remember, sustain concentration and persist, socially interact and adapt "unpersuasive, as the record does not support the finding of marked limitation in any mental health related functional area." [Tr. 22]. The ALJ noted that "mental status exams found throughout the treatment records show the claimant to be largely unremarkable

23

and her more recent records show that the claimant is reported to be doing well." [*Id.*]. Lastly, the ALJ found Ms. Poschke's opinion "internally inconsistent as she notes the claimant to have marked limitation in several functional areas; however, at the end of her form, she states that the claimant's ability to work depends on what type of job she has." [*Id.*]. Again, contrary to Plaintiff's argument, the ALJ reviewed the consistency and supportability of Ms. Poschke's opinion. While the ALJ acknowledged her treating relationship with Plaintiff, under the revised regulations, the ALJ is not required to explicitly state how they considered each factor. 20 C.F.R. § 404.1520c(b)(1).

Ultimately, although Plaintiff cites to treatment records, which she claims are consistent with Ms. Poschke's opinion, and would interpret the medical record differently, the Court finds that the ALJ's determination was within his "zone of choice." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009); *see also Huizar v. Astrue*, No. 3:07CV411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings.").

**D.      Evidence Regarding the Severity of Plaintiff's Bladder and Urinary Impairments**

Plaintiff claims that the ALJ improperly found her bladder and urinary issues to be a nonsevere impairment, as his analysis mischaracterized the record related to her urinary problems. Plaintiff submits that the medical record "contains extensive records documenting [her] complaints and difficulties with urinary frequency and incontinence." [Doc. 20 at 20]. Additionally, Plaintiff notes that the medical records cited by the ALJ in support of his Step Two finding are unrelated mental health treatment notes. The Commissioner responds that "the ALJ accurately and fairly

24

characterized Plaintiff's comments to Ms. Poschke in August 2018 that she was currently enjoying working a retail job, without any mention of urinary difficulties," as well as that the ALJ properly evaluated Plaintiff's subjective complaints. [Doc. 22 at 22].

During Step Two of the disability decision, the ALJ discussed Plaintiff's urinary issues by stating:

> The claimant testified that she has to go to the restroom every 15 minutes. The medical record shows that in March of 2017, [a] urodynamics procedure was performed, the results of which showed no evidence of detrusor instability and intrinsic sphincter deficiency [Tr. 522]. The medical record also shows that the claimant has presented on occasion in 2018 for treatment and reported to having increased urinary frequency [Tr. 1111 & 1252]. However, her most recent records [from] July and August of 2018 show that the claimant was working retail and enjoying it[,] making no mention of urinary frequency issues [Tr. 1139 & 1142]. Therefore, after my review of the entire record, I have found the claimant's urinary frequency to be a current non-severe impairment.

[Tr. 14].

At Step Two, the ALJ is required to consider whether Plaintiff's alleged impairments constitute "medically determinable" impairments. *See* 20 C.F.R. §§ 404.1508; 416.920(a)(4)(ii); 404.1520(a)(4)(ii). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques," and "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. §§ 404.1508; 416.908. Additionally, an impairment must meet the durational requirement, meaning, "it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. Lastly, "[i]f an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC." *See Jones v. Comm'r of Soc. Sec.*, No. 3:15-CV-00428, 2017 WL 540923, at *6 (S.D. Ohio

Feb. 10, 2017) (internal citations omitted).

To be found disabled, "the ALJ must find that the claimant has a severe impairment or impairments" at Step Two. *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88 (6th Cir. 1985). An impairment, or combination of impairments, will be found severe if the impairment(s) "significantly limit[ ] [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The Step Two determination is "a de minimis hurdle" in that "an impairment will be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Brown*, 880 F.2d 860, 862 (6th Cir. 1988) (citing *Farris*, 773 F.2d at 90).

Further, it is well settled that the ALJ's failure to identify some impairments as "severe" is harmless where the ALJ continues the disability determination and considers both severe and nonsevere impairments at subsequent steps of the sequential evaluation as required by the regulations. *See Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) ("And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'") (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.").

Ultimately, the Court finds that the ALJ's Step Two decision that Plaintiff's urinary frequency was not a severe impairment is not supported by substantial evidence, and Plaintiff satisfied her *de minimis* hurdle at this stage of the disability determination. *See, e.g.*, *Higgs*, 880 F.2d at 862 ("Under [this] prevailing *de minimis* view, an impairment can be considered not severe

only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience.").

Plaintiff "bears the burden of demonstrating that [s]he suffers from a medically determinable physical impairment[,]" as well as "the burden of showing a severe impairment by medical evidence." *Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 559 (6th Cir. 2014). Here, Plaintiff points to a July 30, 2018 treatment note wherein Plaintiff reported that she had increased urinary frequency and recurrent urinary tract infections. [Tr. 1313]. A urinalysis was subsequently ordered, although it does not appear the results are present in the medical record. [Tr. 1316]. Plaintiff also notes a complaint of an overactive bladder in October 2017 [Tr. 932] and similar complaints of urinary frequency on June 18, 2018 [Tr. 1324]. An impairment is considered "severe" unless "the [claimant's] impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities." Soc. Sec. Rul. 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985). Therefore, the Court finds that Plaintiff has cited to evidence in the medical record regarding her urinary frequency to overcome her *de minimis* hurdle at Step Two of the disability determination.

Moreover, the ALJ's citation to Plaintiff's "most recent records" regarding her retail job are based on her mental health records from Helen Ross McNabb on July 27, 2018 and August 13, 2018. [Tr. 14]; *see* [Tr. 1139 & 1142]. After reviewing the medical record regarding Plaintiff's urinary problems, the sole analysis in support of his finding that her urinary frequency was a non-severe impairment was the citation to the unrelated mental health records. Therefore, the Court cannot find that the ALJ's Step Two determination was supported by substantial evidence. "In reviewing the ALJ's severity finding, the Court's job is not to decide whether it would find differently, but whether substantial evidence supports the ALJ's finding." *Guerrero v. Comm'r of*

27

*Soc. Sec.*, No. 2:19-cv-1426, 2019 WL 6798918, at *6 (S.D. Ohio Dec. 13, 2019). Plaintiff also states that she was only able to work at the new retail job for a couple of weeks because of several medical problems, including frequent urination, and that she testified about this issue during the hearing. [Tr. 167–69].

Additionally, although the ALJ found Plaintiff's urinary frequency to be a current non-severe impairment, he failed to further address this issue during the RFC determination. "If the ALJ discusses an impairment in the step two severity analysis, and finds the impairment to be nonsevere, he or she must still consider the impact of any non-severe limitations in the RFC analysis." *Hines v. Berryhill*, No. 6:17-CV-160-HAI, 2018 WL 2164873, at *4 (E.D. Ky. May 10, 2018). The ALJ's only analysis of the relevant medical evidence discussed above is during Step Two of the disability determination. *See, e.g.*, *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 326 (6th Cir. 2015) ("[T]he ALJ's step-four determination regarding Winn's RFC did not consider Winn's mental impairments in a meaningful way."); *Six v. Comm'r of Soc. Sec.*, No. 2:18-CV-01639, 2020 WL 746595, at *7 (S.D. Ohio Feb. 14, 2020) ("Failure to state the basis for including no limitations arising from non-severe impairments is error."); *Katona v. Comm'r of Soc. Sec.,* No. 14–CV–10417, 2015 WL 871617, at *6 (E.D. Mich. Feb. 27, 2015) ("And to the extent an ALJ determines that an identified impairment, severe or *non-severe,* does not result in any work-related restrictions or limitations, the ALJ 'is required to state the basis for such conclusion.'") (quoting *Hicks v. Comm'r of Soc. Sec.,* No. 12–13581, 2013 WL 3778947, at *3 (E.D. Mich. July 18, 2013)) (other citations omitted); *see also* SSR 96-8p, 1996 WL 374184, at *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

Accordingly, on remand, the ALJ is directed to reconsider whether Plaintiff's urinary frequency constitutes a severe impairment and assess any limitations stemming from this impairment in the RFC determination.

### E.   Plaintiff's Right Foot Impairment and Newly Submitted Evidence

Plaintiff claims that the ALJ erred by failing to properly evaluate her orthopedic impairments, specifically her right foot impairment, as well as that newly submitted evidence submitted to the Appeals Council is contrary to the ALJ's finding that this impairment would not meet the durational requirement.  Plaintiff submits that the ALJ only discussed evidence regarding her left toe fracture, as well as that "the new evidence submitted to the Appeals Council shows that she continued to have significant difficulties with her right foot injury and was using a knee walker for ambulation through at least January 2019."  [Doc. 20 at 23].  Plaintiff notes that at the hearing, she was wearing a walking boot and specifically discussed issues with her right foot not healing properly after surgery on her right great toe in December 2017, but that the ALJ only addressed the evidence regarding her left toe fracture.  [*Id.* at 22–23].

The Commissioner responds that the ALJ did in fact discuss Plaintiff's medical records regarding her right ankle and great toe, as well as "image testing of the right foot from September 2018 that showed findings consistent with a bone injury or stress injury."  [Doc. 22 at 21].  Additionally, the Commissioner claims that remand is not required for additional consideration of the evidence Plaintiff submitted to the Appeals Council because it is not material.  Plaintiff replies that this newly submitted evidence supports further physical limitations and would impact "the severity of this impairment and the durational requirement."  [Doc. 23 at 5].

In the disability decision, the ALJ reviewed imaging of Plaintiff's left foot and found "that this impairment does not meet the durational requirement for a severe impairment."  [Tr. 14].

While the ALJ failed to specifically address medical records related to Plaintiff's right foot, he noted that Plaintiff "had surgery on her right great toe" in July of 2016, and generally reviewed the medical records and related treatment, including that an examination in September of 2016 "showed her to be in no acute distress with 2/4 pulses, normal capillary refill test and an examination of her right toe showed no erythema, drainage, dehiscence, local pain, clinical signs of infection, or pain with palpation and the wound base was dry with minimal swelling." [Tr. 17]. The ALJ further noted a medical visit in June 2017 when Plaintiff "reported to having continued pain in her right foot and after evaluation, surgery was recommended . . . [and] apparently had surgery on her right big toe in December 2017." [Tr. 18]. The ALJ also reviewed imaging of Plaintiff's right foot in September of 2018. [Tr. 21].

Ultimately, as discussed above, any failure by the ALJ to specifically consider Plaintiff's right foot impairment would be harmless because of his subsequent consideration of its effect in the RFC determination. As the Court has already found that Plaintiff's case will be remanded, however, the ALJ is advised, but not directed, to specifically consider the newly submitted evidence regarding Plaintiff's right foot injury and use of a knee walker through at least January 2019. Further, the ALJ is advised to review whether Plaintiff's right and left foot impairments constitute a severe impairment, and if necessary, reconsider their impact in the RFC determination.

VI.     CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 19**] will be **GRANTED IN PART**, and the Commissioner's Motion for Summary Judgment [**Doc. 21**] will be **DENIED**. This case will be **REMANDED** to the SSA for the ALJ to appropriately consider Plaintiff's ability to interact with her coworkers and supervisors in the RFC determination, review the effect that Plaintiff's migraine headaches may have on her ability to perform work-related

30

activities, and review Plaintiff's severe and nonsevere impairments (including Plaintiff's urinary frequency and orthopedic impairments).

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge

31